UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL BYERS,
      Plaintiff,

vs.

CITY OF CINCINNATI,
      Defendant.

Case No. 1:13-cv-339
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

This matter is before the Court on a motion to dismiss the complaint filed by defendant City of Cincinnati ("the City") (Doc. 5), plaintiff Paul Byers' memorandum in opposition to the motion (Doc. 7), and defendant's reply in support of the motion (Doc. 8).

## I. Procedural History

Plaintiff filed the pro se complaint in this matter on May 20, 2013, alleging a violation of his federal rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution. (Doc. 1). The complaint makes the following allegations in support of plaintiff's claim: Paul Byers is a resident of the City of Cincinnati. (*Id.*, ¶ 1). Effective April 15, 2011, the City began deducting a service charge of $4.90 per hour from the paychecks of plaintiff and other Cincinnati police officers who performed Cincinnati police off-duty details to cover the administration costs of the off-duty detail program. (*Id.*, ¶ 5; Exh. 1 - City Ordinance No. 463-2010). The City has taken $5,186.67 in such fees from plaintiff. (*Id.*, ¶ 6; Exh. 2 - Detail Administrative Fee Invoices). The off-duty detail fee charged to officers was discontinued with the passage of Cincinnati City Ordinance No. 62-2012 on March 7, 2012. (*Id.*, ¶ 7; Exh. 3 - City Manager's "Update Report on Police Off-duty detail Fee").

Effective January 1, 2013, the City implemented a vendor fee of $1.64 per hour for non-City sponsored off-duty details to cover administration costs of the off-duty detail program. (*Id.*,

¶ 8; Exh. 4 - City Manager's 12/10/12 "Follow-up Report on Police Off-Duty Detail Fee"). The City calculated the costs of administration of the off-duty detail program for vendors at this amount. (*Id.*, ¶ 10; Exh. 4). The City calculated the costs for administration of the off-duty detail for plaintiff at $4.90 per detail hour. (*Id.*, ¶ 9; Exh. 5 - "City Manager's 4/22/11 "Follow Up Report on Administrative Costs for the Police Off-Duty Detail Program"). Administrative costs for vendors were established at $676,383.61 (Exh. 4, p. 1), while administrative costs for plaintiff were established at $929,843.34 (Exh. 5, p. 2). (*Id.*, ¶¶ 11, 12). Total off duty hours for vendors were established at 206,152.36 (Exh. 4, p. 4), while total off duty hours for plaintiff were established at 191,274 (Exh. 5, p. 2). (*Id.*, ¶¶ 13, 14). The public safety benefit accorded to vendors was established at half of the calculated costs (Exh. 4, p. 6), while the public safety benefit accorded to plaintiff was zero. (*Id.*, ¶¶ 15, 16). The hourly administrative fee for vendors was set at $1.64 per detail hour (Exh. 4, p. 6); the hourly administrative fee for plaintiff was set at $4.86 per detail hour (Exh. 5, p. 2); and the hourly administrative fee for plaintiff was reset at $4.90 per detail hour for unknown reasons (Exh. 1). (*Id.*, ¶¶ 17, 18, 19).

The complaint alleges that the benefits and burdens of paying the administrative costs of the off-duty detail program are the same for plaintiff and vendors, but the City calculated the costs of administration differently as between the two. (*Id.*, p. 4). Plaintiff claims he is entitled to the same consideration given the vendors. (*Id.*). As relief, plaintiff seeks to be reimbursed the difference between the $4.90 hourly fee he was charged for 1038.41 hours of off-duty police services and the $1.64 hourly fee the City charges vendors, a claimed difference of $3,385.22.

## II. Standard of Review

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require

"detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts which, if accepted as true, are sufficient to both "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 555, 570; *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the court must accept all well-pleaded factual allegations in the complaint as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must "construe the plaintiff's complaint liberally, in plaintiff's favor, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).

In resolving a motion to dismiss, the court may consider exhibits attached to the complaint as these form part of the complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296-97 (6th Cir. 2008).

It is well-settled that a document filed pro se is "to be liberally construed," and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers [.]" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). However, the Sixth Circuit has recognized that the Supreme

Court's "liberal construction" case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989).

### III. Equal Protection

The Fourteenth Amendment provides: "[N]o state shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The purpose of the equal protection clause of the Fourteenth Amendment is to protect individuals against "intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005) (citing *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 445 (1923) (internal quotation marks and citation omitted)).

The equal protection clause prevents states from making distinctions that "(1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly-situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (citing *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005)). The third theory is known as the "class of one" theory. *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). Under this theory, which applies where no fundamental right or suspect class is implicated, governmental action is subject to equal protection scrutiny under the rational basis test. *Federal Communications Commission v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993); *37712, Inc. v. Ohio Dept. of Liquor Control,* 113 F.3d 614, 621-22 (6th Cir. 1997).

The party who seeks to overturn a legislative enactment on the ground it irrationally discriminates between groups under the equal protection clause bears "an extremely heavy" burden. *37712, Inc.,* 113 F.3d at 622 (quoting *Borman's, Inc. v. Michigan Prop. & Cas. Guar.*

4

*Ass'n,* 925 F.2d 160, 162 (6th Cir. 1991). *See also TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio,* 430 F.3d 783, 791 (6th Cir. 2005) (affirming the district court's conclusion that the plaintiff-hospitals "had not carried [their] heavy burden" of proving an equal protection violation under the class of one theory where the plaintiffs alleged that awarding county tax funds exclusively to the local university hospital and not the plaintiff-hospitals was discriminatory).

To show he was similarly situated with others for equal protection purposes, the plaintiff must show he was similarly situated "in all material respects." *Rondigo v. L.L.C. Township of Richmond,* 641 F.3d 673, 682 (6th Cir. 2011). *See also TriHealth,* 430 F.3d at 790 ("Materiality is an integral element of the rational basis inquiry. . . . [D]isparate treatment of persons is reasonably justified if they are dissimilar in some material respect."). In determining whether individuals are "similarly situated," the standard is not "exact correlation," but instead the court should look for "relevant similarity." *Bench Billboard Co. v. City of Cincinnati,* 675 F.3d 974, 987 (6th Cir. 2012) (quoting *Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir. 2000) (citation omitted)).

In addition to showing that he was treated differently than those who were similarly situated in all material respects, the plaintiff must show that the adverse treatment he experienced was "so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *United States v. Green,* 654 F.3d 637, 651-52 (6th Cir. 2011) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000) (internal quotation marks omitted)). Government action "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Johnson*, 624 F.3d at 746-47 (citing *Beach Communications, Inc.,* 508 U.S. at 313).

5

The plaintiff who challenges a government action may demonstrate that it lacks a rational basis "either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" *Id*. (quoting *Club Italia Soccer & Sports Org. v. Charter Twp. of Shelby, Mich.,* 470 F.3d 286, 298 (6th Cir. 2006) (alteration in original), overruled on other grounds as recognized by *Davis v. Prison Health Servs.*, 679 F.3d 433 (6th Cir. 2012) (quoting *Warren v. City of Athens,* 411 F.3d 697, 711 (6th Cir. 2005)). It is presumed that unless there is some reason to "infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely [the court] may think a political branch has acted." *Beach Communications*, 508 U.S. at 314 (quoting *Vance,* 440 U.S. at 97).

**IV. The City's motion to dismiss**

Defendant moves to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to relief. Defendant argues that the allegations of the complaint and the exhibits attached to the complaint demonstrate that plaintiff is unable to prevail on his equal protection claim under the class of one theory on which his claim appears to be premised. (Doc. 5 at 4). Defendant contends that plaintiff's allegations are insufficient to show that the City intentionally treated plaintiff differently than others who were similarly situated to him. (*Id*. at 5). Defendant further argues that plaintiff is not similarly situated to the vendors with whom he seeks to compare himself because plaintiff provides the police services at issue, whereas vendors utilize those services because they are unable to provide such services themselves. (*Id*.). In addition, defendant alleges there is a rational basis for charging vendors a reduced fee, which was implemented after the City discontinued charging an administrative fee to the police

6

officers. (*Id*. at 6). The City asserts that the reduced fee is kept at a reasonable rate to encourage

vendor participation in the off-duty detail program; it is designed to protect the safety and

welfare of the community by encouraging vendors to maintain order and safety at their

respective locations; and it enables the City to recover its actual costs incurred in administering

the off-duty detail program. (*Id*. at 6).

In response, plaintiff disputes that the vendor fee is directly tied to the City's costs. (Doc.

7 at 1). To the contrary, plaintiff alleges that the exhibits attached to the complaint show the

administrative costs of the off-duty detail program increased every year between 2007 and 2011,

and then precipitously dropped in 2012 when the City "had to sell their fee" to vendors. (*Id*. at

1-2, citing Doc. 1, Exh. 5). Plaintiff further alleges that ill intent and an intent to treat him

differently from others similarly situated to him - *i.e*., vendors - without any rational basis can be

inferred from the City's documents. Plaintiff asserts that these documents show that the costs of

administering the off-duty detail program increased every year until the year the vendors were

required to pay the fee, at which point the costs allegedly decreased by more than one-fourth.

(Doc. 7 at 1-3, citing Exh. 5, p. 2). He alleges a public safety benefit associated with the

program was accorded only to the vendors and not to the taxpayers who paid the fee when it was

assessed against the police officers. (*Id*. at 2). Plaintiff alleges he was treated in a more hostile

manner than vendors because he was coerced into signing an administrative fee invoice as a

condition of employment by the City, which had full control over his salary, and vendors were

treated in a more complimentary and less hostile manner than the police officers as evidenced by

the contrasting tone of the language the City used in documents addressing the fees paid by the

two groups. (*Id*. at 3, citing Exhs. 1, 4). Plaintiff contends that the City recouped more than the

administrative costs of the program from the police officers but intends to recoup only a portion

of the costs from the vendors. (*Id.* at 4, citing Exh. 3, p. 2). Plaintiff further alleges that the public safety benefit derived from the fee was the same no matter who paid the administrative fee, but defendant chose to enhance the benefit by requiring a lower fee only of the vendors. (*Id.* at 4).

Plaintiff further alleges that he and the vendors are similarly situated in that they pay "for the exact same parcel ('administrative fee parcel')." (*Id.*). Plaintiff argues there is no legitimate reason for treating "taxpayers, police and vendors" differently. (*Id.* at 5). He asserts that the City's varying treatment of the police officers and vendors is unrelated to the purpose of the detail fee, which is "to cover the administrative costs" of the program. (*Id.*). He states that the City's decision to treat payment of the detail fee by police officers and vendors differently is not based on the principle of "fiscal neutrality" because plaintiff paid the full costs of administering the program and defendant intends to "capture a portion" of its administrative costs from the vendors. (*Id.*). He also contends that imposition of the lower fee is "an irrational application of a cost/benefit analysis" and contradicts the purpose of the emergency ordinance whereby the City found imposition of the $4.90 fee on police officers was "necessary" to recover the amount the City spent administering the off-duty detail program. (*Id.*). In addition, plaintiff contends that defendant may have been negligent in performing its original calculations as evidenced by the fact the City adjusted the calculations. (*Id.* at 6). Plaintiff also contends that the City did not take into account the public safety benefit the off-duty detail program provides when calculating the fee the police officers paid as it did when calculating the fee to charge the vendors, which is "not only irrational, it smacks of the rejected notion of the divine right of kings." (*Id.*).

**V. The motion to dismiss should be granted.**

Plaintiff's complaint does not state a plausible claim for violation of his rights under the equal protection clause of the Fourteenth Amendment. The complaint should therefore be dismissed for the reasons explained below.

The complaint does not allege that the City's imposition of the $4.90 hourly administrative fee for off-duty detail services burdened a fundamental right of plaintiff or targeted a suspect class. Instead, the complaint alleges that the City calculated the costs of administering the program differently for plaintiff and for vendors, even though the benefits and burdens of paying the administrative costs were the same for both, and that plaintiff was entitled to pay the same fee during the period the fee was charged to him that the vendors are currently required to pay. (Doc. 1, pp. 3-4).

Initially, the Court notes that although plaintiff is apparently proceeding under a class of one theory, it is unclear whether he is claiming that he was singled out for adverse treatment as an individual or whether police officers who participated in the off-duty detail program were targeted for adverse treatment as a group. Plaintiff attempts to frame his claim in terms of the manner in which the City has treated him in contrast to the treatment the City has afforded vendors. However, plaintiff cites to statistics that apparently apply to all off-duty police officers to support his claims[1]. Moreover, there is no allegation that plaintiff was singled out from among these officers for adverse treatment. To the contrary, it appears that all off-duty officers were subject to the same administrative fee that plaintiff was required to pay under the off-duty detail program. Thus, plaintiff's claim appears to be that the City ordinances and legislative enactments imposing different administrative fees for off-duty police officers and vendors

---

[1]*See* Doc. 1, p. 3 - "Administrative costs for Plaintiff was set at $929,843.34"; Exhibit #5 p.2 - "Total off duty hours for Plaintiff was set at 191,274."

intentionally treated the officers, including plaintiff, differently from similarly situated vendors for no legitimate reason.

Plaintiff has failed to state an equal protection claim under a class of one theory. First, the off-duty police officers and the vendors are not similarly situated in any material respect. The off-duty officers are City employees who are bound by the collective bargaining agreement between their bargaining unit and the City. (*See* Doc. 1, Exh. 3). The vendors are not employed by the City. The City police officers render off-duty police services for which they are paid by the vendors, and the pay they receive is an incentive to perform those services. The vendors utilize the services of the off-duty police officers because they are unable to provide these public safety services themselves at their events, but they must pay for those services. The administrative fee is an additional amount the vendors must pay on top of the charge for the off-duty police services for which they contract. (*See* Doc. 1, Exh. 3). These are material differences between the police officers and the vendors, and the mere fact that the two groups were required to pay an administrative fee at different points in time does not make the two groups similarly situated.

Further, even assuming plaintiff and the other off-duty police officers were similarly situated to the vendors, plaintiff has failed to allege facts to show that there is no "reasonably conceivable state of facts that could provide a rational basis" for imposing a lower administrative fee on vendors than on police officers who worked off-duty details. *See Johnson*, 624 F.3d at 746-47. Rather, a review of the exhibits attached to the complaint discloses that imposition of a lower off-duty detail administrative fee on vendors as compared to police officers survives rational basis scrutiny because it is rationally related to a legitimate government interest. *See id.* at 747.

The public records attached to the complaint show that the City passed Ordinance No. 463-2010 on December 30, 2010, authorizing the City Manager to apply an hourly service charge of $4.90 for Cincinnati Police officers' off-duty detail services "for the purpose of offsetting the administrative costs incurred by the Cincinnati Police Department for administering outside detail services to various private entities." (Doc. 1, Exhs. 1, 3).  The administrative services required to process off-duty officer details to various private entities were described as "significant," with the Police Department reportedly incurring annual management costs of approximately $925,100.00, for which it was not reimbursed by the private entities who received those services.  (Doc. 1, Exh. 1).  The City began charging the fee to off-duty police officers effective April 15, 2011 (Doc. 1, Exh. 3), but the fee was discontinued when the City Council passed Ordinance No. 62-2012 on March 7, 2012, authorizing the collective bargaining agreement between the City and the Fraternal Order of Police, Queen City Lodge No. 69.  (Doc. 1, Exh. 3).  A summary of the terms of the collective bargaining agreement as it pertained to the off-duty detail fee was set forth in an April 2, 2012 report from the City Manager to the Mayor and City Council.  (Doc. 1, Exh. 3, p. 1).  Pursuant to the collective bargaining agreement, the off-duty detail fee charged to the officers was to be discontinued for the term of the collective bargaining agreement; sole discretion to establish the off-duty detail rate charged to vendors was vested in the Police Chief; and the City retained the right to charge vendors a fee for

administering the off-duty detail program. The City Manager's report made the following

recommendation:

> While vendors are considered the direct beneficiaries of off-duty details, the City of Cincinnati more broadly benefits from the occurrence of these details. Officers who participate in off-duty details can enhance safety within the City as these officers provide protection to both citizens and visitors to the City, reduce crime through increased police visibility, and generally increase the law enforcement capabilities of the department. However, the City does incur costs to administer these off-duty details. In order to capture *a portion* of these administrative costs, the Administration recommends implementing an off-duty detail fee charged to vendors on an hourly basis. In essence, this would change who is responsible for paying the fee. The burden of the fee would now be placed on the vendor as opposed to an individual officer working an off-duty detail. The vendor would remit the off-duty detail fee directly to the City.

(Doc. 1, Exh. 3, p. 2) (emphasis added).

In a follow-up report dated December 10, 2012, the City Manager reported that the cost

to administer the off-duty detail program was approximately $676,383.61 annually and the cost

of administering the program was $3.28 per off-duty detail hour worked. (Doc. 1, Exh. 4, p. 4).

A recommendation was made that half of this hourly amount be charged to the vendors, which

would generate approximately $350,000 in General Fund revenue, or approximately half of the

Police Department's costs of administering the program. (*Id*. at 6). The reasons given were two-

fold. First, the Police Department would bear some of the cost in recognition of the public safety

benefit generated through the off-duty details. (*Id*.). Second, the vendors would reap the

benefits of an agreed upon wage freeze between the City and the police officers' bargaining unit

which had been in effect since 2009; *i.e.*, by paying the additional $1.64 per hour vendor fee for

non-City sponsored off-duty details, the amount the vendors paid per service hour would be less

than they would have paid had the police officers received a 2% COLA for 2010, 2011 and 2012.

(*Id*. at 6-7).

12

These documents, which plaintiff attached to the complaint, show that the City made a reasoned decision following discontinuation of the police officer fee under the collective bargaining agreement to charge the vendors a fee that would cover only a portion of the actual administrative costs. The City Manager's reports demonstrate that there was a rational basis for charging the fee at the calculated rate: *i.e.*, a desire to recoup *some* of the City's administrative costs at a rate that the vendors would perceive as reasonable. (*See* Doc. 1, Exh. 3, p. 2). In addition to the goal of recouping a portion of its administrative costs, the City stated it wanted to reap the public safety benefits afforded by the presence of off-duty officers at the vendors' events. (*Id.*). Accordingly, a fee was calculated that was comparable to the amount the vendors would have paid had a wage freeze not been in effect over the preceding three years. (*See* Doc. 1, Exh. 4, pp. 6-7). The City's decision to charge a fee that covered only a portion of the actual cost bears a reasonable relationship to its goals of recouping some of administrative expenses, while insuring a police officer presence at private events and thereby enhancing public safety by charging vendors a fee in an amount they would likely be willing to pay.

Plaintiff has not made allegations which, if accepted as true, could negative every conceivable basis that might support the legitimate basis proffered by the City for its action or which support an inference that the challenged City action was motivated by animus or ill-will. *See TriHealth, Inc.*, 450 F.3d at 788. There is no question that the administrative fee charged to the vendors was lower than the fee previously charged to off-duty officers and covered only a fraction of the actual expenses of administering the off-duty detail program. While plaintiff disagrees with the City's decision to require the vendors to shoulder only a portion of the burden of the administrative costs, his allegations and exhibits fall far short of raising an issue as to the rationality of the City's decision. Questioning the City's calculations as to the estimated cost of

13

administering the program is not sufficient to raise an issue as to whether the City's decision was rational. *See TriHealth, Inc.*, 430 F.3d at 790-91 (a "classification [cannot] be deemed to lack rational justification simply because it 'is not made with mathematical nicety or because in practice it results in some inequality'") (quoting *Beach Communications*, 508 U.S. at 316 n.7) (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)). "An equal protection violation will be made out only if the [City's] action is shown to be 'irrational.'" *Id*. (quoting *Warren*, 411 F.3d at 710). The City Manager's memoranda and mathematical calculations show that the City's decision as to the rate to charge the vendors was the result of a logical thought process. *See id*. at 791. The City determined the rate based on a formula and consideration as to the amount the vendors would deem reasonable and be willing to pay. (*See* Doc. 1, Exh. 4). Accordingly, the allegations of the complaint and the exhibits plaintiff has submitted do not support a finding that there is no "reasonably conceivable state of facts that could provide a rational basis" for the City's decision to charge vendors a lower off-duty detail fee than had previously been charged to the off-duty police officers. *See Johnson*, 624 F.3d at 746-47.

The complaint fails to state a claim against the City upon which relief can be granted. Plaintiff's equal protection claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS THEREFORE RECOMMENDED THAT:**

Defendant's motion to dismiss (Doc. 5) be **GRANTED** and this case be **CLOSED** on the docket of the Court.

Date: 11/4/13

Karen L. Litkovitz
United States Magistrate Judge

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL BYERS,
        Plaintiff,                               Civil Action No. 1:13-cv-339
                                                  Barrett, J.
        vs.                                  Litkovitz, M.J.

PATRICIA M. CLANCY, et al.,
        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

15

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Paul Dyers
2000 Radcliff Dr.
Cinti, OH 45204

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☑ Agent
☐ Addressee

B. Received by ( *Printed Name* ) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
*(Transfer from service label)*

7011 3500 0001 5345 9602

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540